UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA WHEATEN, parent and next friend of D.W., a minor,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Civil Case No. 09-986 (RJL)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION
(July 26, 2010) [#10, #11]

Plaintiff, Cassandra Wheaten ("Wheaten"), filed this lawsuit on behalf of her child, D.W., seeking an award of compensatory education on the theory that the District of Columbia and Michelle Rhee, Chancellor of the District of Columbia Public School System ("DCPS"), (together, the "defendants") denied D.W. a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Before the Court are the parties' cross-motions for summary judgment. Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the defendants' motion is GRANTED.

## BACKGROUND

D.W. is a learning disabled child who has been receiving special education services since 1999. AR 156. He attended Dunbar Senior High School ("Dunbar") from 2005 until November 2007. AR 6. At Dunbar, D.W. received mostly Ds and Fs on his

report card. AR 75. On February 26, 2007, a multidisciplinary team ("MDT") met to review D.W.'s Individualized Educational Plan ("IEP"). The MDT recommended transferring D.W. from Dunbar to an institution outside of general education. AR 153.

On April 23, 2007, D.W. received a neuropsychological evaluation to assist in developing an appropriate educational placement for him. D.W. was diagnosed with, *inter alia*, a learning disorder, specifically visual-spatial learning; a history of perinatal cerebral anoxia; and a history of difficulty meeting academic and behavioral expectations. AR 169. The examiner determined that D.W. would benefit from placement in an educational program with individualized instruction to address his academic and behavioral difficulties, as well as vocational training and basic life skills training. *Id.* On September 12, 2007, an MDT met to review and revise D.W.'s IEP. His new IEP required 27.5 hours of special education for D.W. and included goals for math, reading, written expression, and vocational skills. AR 46-52. The MDT agreed that D.W. should be placed in an "out of general education classroom" and that Dunbar was not an appropriate placement for D.W. *Id.*

On November 16, 2007, the parties negotiated a settlement agreement whereby defendant would place and fund D.W.'s enrollment at Accotink Academy ("Accotink") in Springfield, Virginia. AR 2. D.W. began attending Accotink on November 22, 2007. AR 5. There he participated in a "highly structured and supervised classroom, with a low student-to-staff ratio and access to frequent reinforcement." AR 144. A psychological

evaluation dated January 13, 2008, recommended that D.W. receive individual therapy services to address his anxiety, coping skills, and self-esteem and interpersonal issues. AR 145. During his first two semesters at Accotink, D.W. received mostly Cs, one B, and one D. AR 220. Teacher assessments noted that his grades were not indicative of his ability but instead reflected mandatory letter grade drops due to *frequent* absences! *Id.*

On February 14, 2008, an MDT met to review and revise D.W.'s IEP. D.W. was classified as learning disabled and was to remain in a full-time special education setting. AR 138. In addition to 28 hours of special education instruction, the IEP was modified to include one hour of individual psychosocial therapy and one hour of individual speech therapy per week. AR 36. At the MDT meeting, D.W.'s educational advocate stated that D.W. was owed 220 hours of compensatory education, an assertion that the DCPS representative disputed. AR 142-43. On February 20, 2008, D.W.'s educational advocate sent the DCPS representative a letter slightly revising his request, stating that D.W. was owed 190 hours of specialized instruction and 22 hours of speech language services as compensatory education for inappropriate placement at Dunbar for several months during the 2006-2007 school year and the beginning of the 2007-2008 school year, until his placement at Accotink in November 2007. AR 148.

On April 21, 2008, plaintiff filed a due process complaint alleging that DCPS had denied D.W. a FAPE for those same time periods. AR 25. After a hearing on June 6, 2008, a Hearing Officer Determination issued on June 17, 2008 (the "HOD"), concluded

that the DCPS had denied D.W. a FAPE when he was enrolled at Dunbar but that DCPS had remedied the FAPE denial by placing and funding D.W. at Accotink. AR 5, 14. The HOD also denied Wheaten's request for compensatory education, finding that she had not satisfied the criteria established in *Reid v. District of Columbia*, 401 F.3d 516 (D.C. Cir. 2005). AR 12, 14. On May 27, 2009, plaintiff brought the instant action to reverse the June 10, 2008 HOD. The parties then filed cross-motions for summary judgment.

## ANALYSIS

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The IDEA guarantees children with disabilities the availability of a FAPE. 20 U.S.C. § 1400(d)(1)(A). In designing an appropriate education for students with disabilities, the child's parents, teachers, school officials, and other professionals collaborate to develop an IEP to meet the child's unique needs. 20 U.S.C. § 1414(d)(1)(B). If the parent objects "to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," he may seek an impartial due process hearing. 20 U.S.C. §§ 1415(b)(6), 1415(f)(1). If the parent is dissatisfied with the outcome of that hearing, he may appeal the decision to a state court of competent jurisdiction or a federal district court. 20 U.S.C. § 1415(i)(2)(A).

In conducting its review, this Court must grant relief as appropriate, based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). The Supreme Court, however, has interpreted the "preponderance standard of review not to be an allowance of unfettered de novo review." *Reid*, 401 F.3d at 521 (quoting *Bd. of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). Thus while this Court makes an independent determination, it "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Simmons v. Dist. of Columbia*, 355 F. Supp. 2d 12, 16 (D.D.C. 2004) (quoting *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993)). The burden of proof, not surprisingly, rests with the party challenging the administrative determination, who must "at least take on the burden of persuading the

court that the hearing officer was wrong." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). For the following reasons, the plaintiff has not met her burden here.

Plaintiff alleges that because the defendants denied D.W. a FAPE while he attended Dunbar, he is entitled to receive compensatory education. Principally citing *Reid* for support, Wheaten argues that compensatory education is intended to remedy past FAPE denials and thus D.W.'s subsequent placement in private schooling at Accotink was insufficient to erase D.W.'s entitlement to a compensatory education award. I disagree. While the plaintiff is correct that a court may order compensatory education when a disabled child has been deprived of a FAPE and that such "compensatory awards should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA," *id.* at 518, the plaintiff fails to acknowledge that the hearing officer specifically determined that D.W.'s placement at Accotink remedied the prior FAPE denial, thereby rendering an award of compensatory education unnecessary.

In determining an equitable compensatory education award, a hearing officer must engage in a fact-intensive analysis that is qualitative rather than quantitative. *Id.* at 524. Our Circuit has specifically rejected "cookie-cutter" or mechanical remedies, such as awarding one hour of compensatory instruction for each hour that the student was denied a FAPE, and stressed that a hearing officer must take into account individual assessments of the student and focus on the student's individual needs. *Id.* at 523-24. In D.W.'s case,

the hearing officer conducted just such a fact-intensive analysis and determined that the FAPE violation had already been remedied by D.W.'s placement at Accotink. Indeed, the HOD specifically states that "the hearing officer did not assume that the Accotink Academy placement, alone, provided compensation." AR 13. Instead, the hearing officer assessed the evidence submitted by the parties and determined that Wheaten "did not offer proof that the placement [at Accotink] did not compensate for the prior FAPE denial." *Id.* In fact, the hearing officer concluded that "[t]he overwhelming evidence is that the student is making progress at Accotink." *Id.*

In making his determination, the hearing officer pointed to D.W.'s grades at Accotink, which showed marked improvement from Dunbar, and the psychosocial therapy services that D.W. was receiving in accordance with the February 14, 2008 IEP. *Id.* The hearing officer also noted that Wheaten "testified that her son is doing much better at Accotink—his grades are better; his behavior improved; he wants to go to school; his attitude and self-confidence improved; and she is happy with Accotink." *Id.* In light of all the evidence, the hearing officer concluded that D.W. did not require "additional services beyond his Accotink IEP to undo damage caused by prior violations." *Id.* In other words, the hearing officer denied Wheaten's request for compensatory education not because of Accotink's private school status but because D.W. showed a clear improvement in his attitude and grades—all of which occurred before plaintiff filed her complaint—indicating that his FAPE denial had been fully remedied.

Based on a thorough review of the record, I find no reason to reverse the hearing officer's decision, and the plaintiff has not provided one. Given the strides that D.W. made following his placement at Accotink, both academically and behaviorally, and the continuing services provided to him under the most recent IEP, the Court agrees with the HOD that no award of compensatory education is warranted. *See Thomas v. Dist. of Columbia*, 407 F. Supp. 2d 102, 115 (D.D.C. 2005) (acknowledging that "[i]t may be conceivable that no compensatory education is required for the denial of FAPE" because a student has "flourished in his current placement"). Finding no basis to overturn the hearing officer's determination that D.W. was not owed compensatory education, plaintiff's claim for 212 hours of compensatory education must fail.

## CONCLUSION

For all of the foregoing reasons, the Court DENIES the plaintiff's Motion for Summary Judgment and GRANTS the defendants' Cross-Motion for Summary Judgment. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge